UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HEMSLEY,<br><br>             Plaintiff,<br><br>      v.<br><br>G. SWARTHOUT, et al.,<br><br>             Defendants. | No.  2:12-cv-2930-JAM-EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  He claims that defendants were deliberately indifferent to his serious medical needs in connection with his requests to receive surgery for his left eye, in violation of his rights under the Eighth Amendment.  The matter is currently before the court on defendants' motion to dismiss.  ECF No. 19.

**I.      Standards for a Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In considering such a motion the court must accept as true the allegations of the complaint, *Erickson v. Pardus*, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a

1

cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007). However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic Corp.*, 550 U.S. at 554, in turn quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

## II.    Plaintiff's Allegations

Plaintiff claims that in 2006 he suffered an injury to his left eye while confined at the Santa Rita County Jail and was unable to obtain medical attention for the injury while at the jail. First Am. Compl. (ECF No. 12) at 6. In 2008, plaintiff was sentenced to prison and was transferred to Pleasant Valley State Prison ("PVSP"). *Id.* Upon arrival at PVSP, plaintiff sought medical attention for his injured left eye from the prison's medical staff. *Id.* On March 4, 2009, plaintiff was examined by a physician who noted that plaintiff had a pending cataract extraction and that he suffered from sickle cell anemia. *Id*. at 29. On June 18, 2009, plaintiff was approved for an "urgent" ophthalmologist appointment. *Id.* at 26. On August 4, 2009, plaintiff was again seen by a physician who noted that plaintiff had no retinal detachment and approved plaintiff for a further "urgent" ophthalmologist appointment. *Id.* at 25, 27-28. On September 19, 2009, plaintiff submitted an inmate medical grievance requesting that he receive surgery for his left eye. *Id.* at 6, 12. Plaintiff was seen on September 23, 2009 and was told on September 25, 2009 that his grievance was partially granted and that he had another appointment for a consultation with a specialist pending. *Id*. at 17. On or around November 3, 2009, plaintiff was informed by prison staff during a classification committee at PVSP that he was going to be moved to California State Prison, Solano ("CSP-Solano") because he had sickle cell anemia and, therefore, could contract "valley fever" if he remained at PVSP. *Id*. at 7. Plaintiff was informed by the classification committee that his medical files would follow him to CSP-Solano and that he would continue to receive medical attention as it was currently prescribed. *Id.*

After arriving at CSP-Solano in November 2009, plaintiff immediately informed prison staff of his eye treatment and the gravity of his medical situation. *Id.* Specifically, plaintiff

1 informed staff that if he did not continue to receive laser treatment in preparation for eye surgery,
2 he would lose his eyesight. *Id.* On January 4, 2010,[1] plaintiff filed an inmate medical grievance
3 requesting surgery for his eye. *Id.* at 13. Plaintiff was evaluated by Dr. Carr, an optometrist, on
4 January 15, 2010, who granted plaintiff's request for services for examination by an
5 ophthalmologist. *Id.* On January 25, 2010, plaintiff received an informal-level response to his
6 grievance, partially granting plaintiff's request, confirming that plaintiff had been evaluated by
7 Dr. Carr, and informing plaintiff that his information had been forwarded to the scheduling
8 department. *Id.* Plaintiff resubmitted his medical grievance at the formal level on January 29,
9 2010, explaining that he already had already received a decision partially granting his request
10 which stated the same thing as the informal-level response; i.e., that he needed "emergency eye
11 treatment," and that the "*Plata* attorney says I am supposed to get the care I need." *Id.* In
12 February 2010, plaintiff was examined again by Dr. Carr, who told plaintiff that the treatment
13 plaintiff needed was not available at CSP-Solano, that the corrective surgery required was beyond
14 his abilities, and that he was not sure why plaintiff kept getting sent back to him. *Id.* at 8.

15 On May 12, 2010, Dr. Winn interviewed plaintiff in response to the formal grievance
16 plaintiff had filed on January 29, 2010. *Id.* at 13-14. Dr. Win also partially granted plaintiff's
17 grievance and noted that plaintiff was scheduled for an appointment to have his eye problem
18 examined by a specialist during the third week of May. *Id.* at 6-7, 14. On May 20, 2010, plaintiff
19 submitted another grievance stating that he had been waiting to be seen by a specialist from an
20 outside hospital since November 2009, had lost all sight in his left eye, and had been suffering
21 from open wounds on his ankles due to complications with his sickle cell anemia and had been to
22 several hospitals regarding this problem. *Id.* at 7, 18, 21. Plaintiff further stated that the
23 antibiotic ointment he had been given for his eye was not working and requested that he be seen
24 by an ophthalmologist. *Id.* at 18.
25 /////
26

---

27 [1] Plaintiff mistakenly dated his grievance filed in January 2010 as "1-4-09." A review of
the exhibits attached to plaintiff's First Amended Complaint reveals that this grievance was
28 actually submitted and received by prison staff in January 2010, not 2009. *See* ECF No. 12 at 13.

Dr. McAlpine, a member of the medical staff at CSP-Solano, arranged for an appointment with an outside specialist, and, on May 21, 2010, plaintiff was treated by an ophthalmologist at U.C. Davis, who noted that plaintiff suffered from a detached retina and "unusual pressure to the point that [plaintiff's] real lens is smashed into the front of [his] eye." *Id.* at 8-9, 30. The specialist also allegedly told plaintiff that the initial surgery had become too risky and that plaintiff would eventually lose his left eye. *Id.* at 30.

On June 25, 2010, plaintiff was examined by a nurse at CSP-Solano in response to plaintiff's May 20, 2010 grievance. *Id.* at 19. Plaintiff resubmitted his grievance for second-level review alleging that his civil rights were violated and that he may lose his eye. *Id.* Dr. Winn partially granted plaintiff's grievance on August 4, 2010. *Id.* Dr. Winn's response was received by plaintiff on August 13, 2010; the response noted that plaintiff had up to fifteen days to submit an appeal at the director's level. *Id.* Plaintiff submitted an appeal for director's level review on September 25, 2010; this appeal was screened out as untimely on October 22, 2010 because plaintiff had filed his appeal more than fifteen days after receiving his second-level response from Dr. Winn. *Id.* at 19, 23.

### III. Discussion

Defendants contend that the Eighth Amendment claims against Dr. Winn, Dr. Traquina, and Dr. Carr should be dismissed because plaintiff fails to allege facts sufficient to show that any of these defendants acted with deliberate indifference to plaintiff's serious medical needs.[2] ECF No. 19-1 at 3-7. The court agrees. Even assuming allegations of facts sufficient to show a serious medical need, plaintiff fails to allege facts sufficient to show that Dr. Winn, Dr. Traquina, or Dr. Carr acted with deliberate indifference to plaintiff's needs.

/////

---

[2] Defendants also argued that plaintiff's claims for injunctive relief against each defendant should be dismissed because they are barred by the fact that plaintiff is represented as a member of the plaintiff's class in the pending case *Plata v. Brown* No. 3:01-cv-01351 (N.D. Cal.). ECF No. 19-1 at 7-10. However, defendants have withdrawn this argument in their reply brief in light of the Ninth Circuit Court of Appeals' recent ruling in *Pride v. Correa*, 719 F.3d 1130 (9th Cir. 2013), which held that the ongoing *Plata* litigation does not preclude inmates from pursuing claims for individualized injunctive relief. ECF No. 28 at 2, n.1.

4

The Eighth Amendment prohibits state actors from acting with deliberate indifference to an inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825 (1994). A claim based on deliberate indifference to health or safety has two elements. First, an inmate must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. Second, the inmate must show that defendants acted with "deliberate indifference" to that risk. *Id.* Deliberate indifference is shown by proof that a prison official was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that he drew the inference. *Id.* at 837. Allegations showing that the defendant officials acted with negligence or even gross negligence will not suffice to meet this standard; the defendant officials must subjectively know of the risk to plaintiff's health and consciously disregard that risk. *Id.* at 835-37.

In the context of medical treatment, a cause of action for deliberate indifference arises upon a showing that two elements have been met. First, "the plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury' or the 'unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Next, the plaintiff must show that the defendant prison official acted with "deliberate indifference," which may be shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)). "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment . . . .'" *Id.* (quoting *McGuckin*, 974 F.2d at 1059 (in turn quoting *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988))); *see also Estelle*, 429 U.S. at 104 (holding that prison officials act with deliberate indifference when they "intentionally deny[ ] or delay[ ] access to medical care or intentionally interfer[e] with the treatment once prescribed.").

### A. Dr. Carr

Plaintiff alleges that Dr. Carr was the optometrist assigned to see plaintiff at CSP-Solano between November 2009 and May 2012. ECF No. 12 at 8. Plaintiff further alleges that he had spoken with Dr. Carr on several occasions about the eye treatment he had been receiving prior to

5

being transferred to CSP-Solano. *Id.* He was later sent back to see Dr. Carr in February 2010 after Dr. Carr had reviewed plaintiff's medical file. *Id.* During this meeting, Dr. Carr informed plaintiff that the surgery plaintiff needed could not be performed at CSP-Solano and that it was beyond his capabilities to perform the necessary surgery. *Id.* Dr. Carr also allegedly told plaintiff that he was unsure why plaintiff kept getting sent back to him for treatment. *Id.* Plaintiff alleges that he later had a second meeting with Dr. Car and that, during this meeting Dr. Carr informed plaintiff that he had reviewed the "files specifying the urgency to care for [plaintiff's] eye treatment." *Id.* Plaintiff claims that Dr. Carr never warned plaintiff that he needed to immediately complete the procedure specified in his medical records and that if he did not do so, he would risk losing his left eye. *Id.* Plaintiff alleges that this warning was not communicated to him until he received treatment from the ophthalmologist at U.C. Davis on May 21, 2010. *Id.*

In his opposition brief plaintiff adds that his Eighth Amendment claim against Dr. Carr is premised on a theory that Dr. Carr based his "treatment of [plaintiff's] serious medical need on budgetary concerns and unavailability of treatment instead of medical opinions." ECF No. 27 at 10. While a showing that a defendant refused plaintiff necessary medical care due solely to budgetary concerns is sufficient to show deliberate indifference, *see Jones v. Johnson*, 781 F.2d 769, 771 (1986), the facts plaintiff alleges in his first amended complaint with regard to Dr. Carr do not demonstrate or permit the inference that at any point Dr. Carr delayed, denied, or otherwise failed to provide adequate medical care to plaintiff for this reason. Moreover, the alleged facts indicate that Dr. Carr told plaintiff that, as an optometrist, he was unqualified to perform the corrective eye surgery plaintiff needed, which an ophthalmologist needed to perform. This shows that Dr. Carr told plaintiff that the treatment was unavailable from Dr. Carr not with the intent to prevent plaintiff from receiving necessary care, but rather for the very appropriate reason that he was actually unable to perform the procedure(s) plaintiff needed. Plaintiff's allegations further show that Dr. Carr appropriately generated a request for plaintiff to see an outside ophthalmologist after their meeting on January 15, 2010, which was sent to the scheduling department at CSP-Solano. *Id.* at 13. Rather than demonstrating indifference, this indicates that Dr. Carr was responsive and did what he could to assist plaintiff in obtaining the

6

1    medical treatment he needed and that the decision to schedule plaintiff's appointment with the
2    ophthalmologist in late May of 2010 was outside Dr. Carr's control. Based on these alleged facts,
3    the court finds that plaintiff's factual allegations fail to plausibly show that Dr. Carr acted with
4    deliberate indifference.
5    Plaintiff's also claims that Dr. Carr failed to inform plaintiff that he needed to obtain
6    surgical treatment immediately during their February 2010 meeting. However, the alleged facts
7    fail to show how this failure caused plaintiff to suffer the harm he alleges. *See Jett*, 439 F.3d at
8    1096. The allegations show that Dr. Carr had already examined plaintiff on January 25, 2010 and
9    had generated a request for plaintiff to see an ophthalmologist, which he forwarded to the prison's
10   scheduling department. Plaintiff claims that Dr. Carr failed to give him the warning during their
11   meeting in February 2010, after Dr. Carr had already set into motion the events that would lead to
12   plaintiff receiving an examination from an ophthalmologist. Additionally, the various medical
13   grievance forms filed by plaintiff, which are attached as exhibits to the complaint, show that
14   plaintiff was already aware of the gravity of his eye condition and was seeking medical treatment
15   for his condition prior to his meeting with Dr. Carr. Merely warning plaintiff of the repercussions
16   of waiting to obtain surgical treatment for his eye would not have led to plaintiff receiving
17   ophthalmological care more quickly under these alleged circumstances, nor would it have
18   prevented further injury caused by plaintiff's eye condition. Accordingly, plaintiff's allegations
19   fail to plausibly show that Dr. Carr acted with deliberate indifference to plaintiff's serious
20   medical needs. Thus, this claim should be dismissed.

### B.  Dr. Traquina

22   Plaintiff alleges that Dr. Traquina is the Chief Medical Officer ("CMO") at CSP-Solano,
23   is in charge of overseeing "all new arrivals['] priority medical needs," and reviews the medical
24   files of all new arrivals. ECF No. 12 at 8. Plaintiff further alleges that Dr. Traquina is the "direct
25   overseer involved with scheduling appointments" at CSP-Solano. *Id.* Plaintiff claims that after
26   Dr. Traquina reviewed plaintiff's numerous high priority referrals, stamped with "emergency" or
27   "urgent," he "failed to send [plaintiff] back to the ophthalmologist who originally started
28   [plaintiff's] eye treatment." *Id.*

These allegations alone are insufficient to show that Dr. Traquina acted with deliberate indifference to plaintiff's serious medical needs.  As a threshold matter, claims premised on a vicarious liability theory of respondeat superior are simply not cognizable under Section 1983. Thus, predicating a claim on the fact that Dr. Traquina is the CMO at CSP-Solano, in charge of overseeing all new arrivals' priority medical needs, and is the "direct overseer involved with scheduling appointments," without more cannot state a cause of action.  A supervisor generally cannot be held liable for an alleged constitutional deprivation under section 1983 unless that supervisor personally directs or takes part in the deprivation.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is no respondeat superior liability under section 1983."); *see also Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984).

Furthermore, plaintiff's remaining allegation, that Dr. Traquina personally reviewed plaintiff's numerous high priority referrals and failed to send plaintiff back to the ophthalmologist he had been seeing when he was housed at PVSP, also fails to show, without more, that Dr. Traquina acted with deliberate indifference.  Plaintiff does not allege that this failure to schedule an appointment for plaintiff with the ophthalmologist was purposeful or was done with the intent to delay or hinder plaintiff's care.  Moreover, even when construed liberally, plaintiff's factual allegations do not give rise to a plausible inference that Dr. Traquina acted with the intent to interfere with plaintiff's medical care by failing to do so.  At most, plaintiff's allegations concerning Dr. Traquina suggest that plaintiff merely disagrees with Dr. Traquina's actions because he did not send plaintiff back to his prior ophthalmologist.  Such a contention is insufficient to show that Dr. Traquina acted with deliberate indifference towards plaintiff's medical needs.  *Franklin v. State of Or., State Welfare Div.,* 662 F.2d 1337, 1344 (9th Cir. 1981) (citing *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a section 1983 claim."); *see also Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) ("Inmates do not have a constitutional right to receive a particular course of treatment of their choosing.").

Finally, plaintiff does not allege any facts suggesting that Dr. Traquina was personally involved with the examinations and treatments plaintiff received while plaintiff was housed at

1  CSP-Solano or that Dr. Traquina otherwise engaged in actions that denied, delayed or interfered
2  with plaintiff's medical treatment.  Accordingly, plaintiff's deliberate indifference claim against
3  Dr. Traquina must be dismissed.

### C. Dr. Winn

Plaintiff alleges that Dr. Winn was his primary care doctor at CSP-Solano from November 2009 until the end of May 2011.  ECF No. 12 at 9.  Plaintiff further alleges that he personally saw Dr. Winn "over 25 times beginning in November through January."[3]  *Id.*  During these meetings, plaintiff expressed his concerns regarding the problems with his left eye to Dr. Winn.  *Id.*  During his first appointment, plaintiff explained to Dr. Winn that, when he had been transferred to CSP-Solano, he was engaged in the beginning stages of a serious eye procedure and that an ophthalmologist had told him that he had to have this procedure done or he would lose his eye.  *Id.*  Dr. Winn saw plaintiff on May 12, 2010 and informed plaintiff that he had an appointment with a specialist at U.C. Davis in the third week of May.  *Id.* at 6-7, 14.  Plaintiff was also seen by Dr. Winn in August of 2010, in response to an inmate grievance plaintiff submitted for his ankles, and partially granted plaintiff's grievance.  *Id.* at 19.  Plaintiff also "filed numerous appeals demanding to speak to someone about Dr. Winn's inabilities etc."  *Id.* at 9.

Plaintiff alleges that he told Dr. Winn "about the numerous high priority referrals that was [sic] stamped URGENT or EMERGENCY in [plaintiff's] medical file."  *Id.* at 8.  He further claims that he expressed to Dr. Winn the urgency in which eye surgery needed to be done on numerous occasions and that "Dr. Winn went as far as to tell [him] that [his medical files] did not exist."  *Id.* at 9.  Plaintiff alleges that Dr. Winn's statement was false and that Dr. Winn knew that it was false because plaintiff's ophthalmologist had informed plaintiff in 2009 that she had placed plaintiff's "urgent 2 to 4 weeks priority papers" in plaintiff's medical file.  *Id.*  Furthermore, plaintiff alleges that "Dr. Winn has a personal hatred" towards him because Dr. Winn told plaintiff that plaintiff's medical papers were not stamped "URGENT" even though plaintiff had

---

[3] Although plaintiff does not specify the year(s), based on the documents plaintiff has attached to his first amended complaint, the court assumes that the "November until January" period plaintiff refers to was from November 2009 until January 2010.

1  "all kinds of papers stamped URGENT." *Id.* at 30.  Plaintiff argues that Dr. Winn's actions
2  directly caused the pain he allegedly has suffered as a result of his not receiving laser eye
3  treatment before it became too risky for him to undergo such a procedure.  *Id.* at 9-10.

4  While plaintiff alleges facts sufficient to show that Dr. Winn knew of plaintiff's serious
5  medical condition and the threat that it posed, plaintiff's allegations, as they are currently stated,
6  fail to show that Dr. Winn engaged in "a purposeful act or failure to respond to [plaintiff's] . . .
7  medical need" in a way that caused plaintiff to suffer the harm he alleges.  *Jett,* 439 F.3d at 1096.
8  Plaintiff alleges that he was seen by Dr. Winn numerous times between November 2009 and
9  January 2010, but plaintiff fails to allege any facts regarding what actions, if any, Dr. Winn took
10 during these meetings that would suggest that Dr. Winn purposefully tried to delay, deny, or
11 interfere with plaintiff's treatment.  Furthermore, plaintiff fails to allege facts showing when Dr.
12 Winn allegedly told him that there were no medical records indicating that plaintiff's condition
13 was "urgent" or what impact this allegedly false statement had on plaintiff's ability to obtain
14 necessary medical care.  For instance, there are no facts alleged that would suggest that Dr. Winn
15 made this alleged false statement during one or more of the meetings between November and
16 January and used it as a reason to deny or delay plaintiff from receiving further treatment, which
17 might support a claim of indifference on Dr. Winn's part.  Further, if Dr. Winn had made this
18 alleged statement during his May 12, 2010 interview with plaintiff, after plaintiff had already
19 been scheduled for an appointment with the outside ophthalmologist, there are no facts presented
20 that, if true, could show how Dr. Winn's action caused the delay in treatment that plaintiff
21 complains about.

22 Moreover, plaintiff's other alleged facts fail to show how Dr. Winn's actions caused the
23 harm plaintiff alleges.  Plaintiff's allegation that Dr. Winn acted with deliberate indifference
24 because he had "a personal hatred" towards plaintiff is conclusory and fails to include facts,
25 which if true, are sufficient to show that Dr. Winn actually denied, delayed, or otherwise
26 interfered with plaintiff's medical care.  Nor does the allegation include specific facts from which
27 it could plausibly be inferred that Dr. Winn harbored such a feeling toward plaintiff and allowed
28 his treatment by affected by it.  Furthermore, the documents plaintiff has attached to his

10

complaint show that Dr. Winn partially granted each of plaintiff's grievances he had reviewed, suggesting that Dr. Winn attempted to facilitate and further plaintiff's care rather than intentionally hindering it. *See Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").

In his opposition brief, plaintiff claims that Dr. Winn "denied and delayed treatment previously ordered on August 5, 2009." ECF No. 27 at 9. Deliberate indifference may be found "where prison officials and doctors deliberately ignore[ ] the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner." *Wakefield v. Thompson,* 177 F.3d 1160, 1165 (9th Cir. 1999). But plaintiff fails to allege facts in either his complaint or opposition indicating that Dr. Winn engaged in activity that delayed or denied plaintiff the treatment allegedly ordered by plaintiff's previous doctor, or that Dr. Winn ignored the previous treatment order for reasons unrelated to plaintiff's medical needs. Without additional factual allegations regarding Dr. Winn's actions with respect to the alleged August 5, 2009 treatment order, plaintiff fails to allege facts sufficient to support a deliberate indifference claim on this basis.

Nevertheless, given the assertions in plaintiff's opposition brief and certain of the facts alleged in the complaint, it is not yet clear that the defects in plaintiff's complaint are incapable of being cured by amendment. With further elaboration as to certain factual allegations in his current complaint and opposition brief, it may be possible for plaintiff to state a claim for deliberate indifference against Dr. Winn. Accordingly, plaintiff's claim against Dr. Winn should be dismissed with leave to amend. *Potter v. McCall*, 433 F.2d 1087, 1088 (9th Cir. 1970) (quoting *Armstrong v. Rushing*, 352 F.2d 836, 837 (9th Cir. 1965)) (holding that inmate plaintiffs proceeding with civil rights claims are entitled to "an opportunity to amend the complaint to overcome the deficiency unless it clearly appears from the complaint that the deficiency cannot be overcome by amendment.").

/////

/////

Accordingly, it is hereby RECOMMENDED that:

1. Defendants' May 28, 2013 motion to dismiss (ECF No. 19) be granted;

2. Plaintiff be granted thirty days from the date of any order by the district court adopting these findings and recommendations to file a second amended complaint raising only his Eighth Amendment deliberate indifference claim against Dr. Winn; and

3. Defendants not be required to respond to any second amended complaint until it is screened by this court pursuant to 28 U.S.C. § 1915A.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 27, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE